Case number 19-1174, et al. Bob's Tire Co., Inc. Petitioner v. National Labor Relations Board. Mr. Koldis for the petitioner, Mr. Seed for the respondent. Good morning, Mr. Koldis. We'll hear from you. Good morning, Your Honor. Thank you. May it please the Court. My name is Gregory Koldis. I'm here on behalf of the petitioner, Bob's Tire Company. This is a petition for review of the decision in order of the National Labor Relations Board that Bob's violated Sections 8A-5 and 8A-1 of the Act in failing to notify and bargain with the union before subcontracting bargaining unit work and before terminating a performance-based bonus program. Initially, I'd like to start with the issue of whether Bob's subcontracted bargaining unit work to a non-bargaining unit employee, and it would be our position that, in fact, he did not, or it did not. Bob's was an entire recycling business, and involved in that business was taking old tires and either calling them out and determining whether they were reusable for retail sale. If not, they could potentially be sold elsewhere for recapping. And the third use would be to chip them to create what's called tire-derived fuel. In 2015, the market for tire-derived fuel basically disappeared, and it was going to be costing – it cost more to process the chips and to ship them to a customer than the customers were willing to pay. Bob's had a substantial pile of these chips piling up at his location, which also created a problem. And there are tires coming in constantly, daily, day after day, that you have to do something with to find some place to put them. And if they're not chipped, you have to do something else with them. Bob's at that point determined to change the nature of his business, to change the direction of his business, by creating a new product and finding a market for it with regard to treating those tires so that he could process those tires, get them off of the yard, and continue to be somewhat profitable as a business. He had some economic difficulties during that period of time, and again, the chip market that disappeared a substantial portion of the business. And the inability to make any profit on the sale of those, and in fact, they were generating a loss, caused Bob to shift away from that. You're arguing the record as if we're going to make initial determinations of fact. If we find that the board's conclusions with respect to this matter, supported by substantial evidence, that's the end of it. I would agree, Your Honor. And the board's given a great... This was work done by bargaining unit employees. No different than what employers frequently do when they see one piece of the operation going up or down. They may make adjustments, and that's essentially the finding of the board. Honestly, I'll tell you my view of the record is, I don't know how I could find under a substantial evidence test that that's wrong. I agree, Your Honor. That's the standard of review. I'm not doing what the ALJ... We're not here to try the case. You're not here to give testimony. We're looking to see what is it about the board's findings, fail substantial evidence review, and I don't know what it is. At this point, Your Honor, I was just trying to provide some background for the court, but I agree with you, Your Honor, that, in fact, that is the standard of review, and that the court's going to provide or going to grant a substantial deference to the ALJ and the NLRB's determination with regard to that. I think the record does have evidence in it, certainly, that reflects that Bob's has acquired new equipment to take on this new venture and had a new market for it and was creating a new product. Mr. Polis, under the board's precedence and under the precedence of the Supreme Court, does the board have to find that there was a substitution or replacement of existing workers before finding that subcontracting is a mandatory subject for bargaining? So is substitution and replacement of workers a predicate for the legal finding? I would say at this point, under the board's cases, particularly the ACME case, that substitution and replacement was not a requirement to find a violation here. We would argue that certainly there was no substitution or replacement. There was no loss of job. There was no loss of overtime time. There was no evidence of any indication that any employee lost anything as a result of this, any unit employee. So I would suggest that under the board's case law, that yes, there is no requirement for replacement. Under the court case law, the court seemed to still address issues of replacing unit employees. And I don't know if this court has ever reviewed the ACME decision or a similar decision. Certainly the First Circuit has, and it's upheld it. And again, that goes back to the standard of whether or not the board acted reasonably in that determination in interpreting the statute in that fashion. If the board found that most all of the work done by the subcontractor was work that was also done by unit employees, isn't that necessarily a finding that they're substituting the subcontractor for unit employees? Because if the issue was capacity and there weren't enough unit employees to get all the work done, then what you can do is just hire more unit employees, right? That's correct. And the board, I think, found that there was substantial overlap in terms of work, some of the work that was done by MASIS employees here that included some work that was previously done by BJ's, the other temp agency that provided employees. There was some overlap of that work. But again, none of those employees from BJ's that were there lost anything as a result of that change. And the testimony in the record indicates that there was an inability for BJ's to supply any additional employees. So, yes. You're talking about a compliance issue. That's not something we're going to decide now. You have in your mind the question as to whether or not there were any losses that can be recovered. I mean, that's a matter not before us. Assuming ACME is right, and we have never rejected ACME, assuming ACME is right, that's really kind of the end of the inquiry. You don't have to show replacement or displacement. I'm sorry. And whether or not what happens in a compliance proceeding remains to be seen. I understand that, Your Honor, but I think that ignores the impact, financial impact and financial effect on an employer for having to go through a compliance hearing if, in fact, the compliance hearing did not otherwise be merited based on... Surely you're not. You're saying that tongue in cheek. I mean, we don't credit that kind of an argument in many realms at all. That is that you have to follow the proceedings and there may be some costs and inconveniences in going through it. I mean, the question is whether or not you violated the law. Now, the next step and possible protection for you is a compliance proceeding. It's kind of a strange argument to say, but that'll cost us time and money to go through the compliance proceeding. I see that I'm into my rebuttal time. I would like to address one other issue, and that is the fact that the MASIS employees in this case were, in fact, should be, in fact, considered to be Bob's employees because Bob's would be a joint employer of those employees under the current rule from the NLRB in terms of determining joint employment. And if, in fact, they are joint employees and considered Bob's employees for purposes of the act, then there really was no subcontracting of work out to employees other than employees that are Bob's employees, and Bob's employees are contained in the unit. Now, you understand that this alternative argument is perfectly inconsistent with your principal argument. Now, I know you can make inconsistent arguments. I understand that. But this is perfectly inconsistent. I understand that it's an alternative argument. Let me ask the question this way. I know you're trying not to smile, but it is perfectly inconsistent. Which one do you want us to go with? Because they're completely inconsistent arguments. You want us to go with your primary argument, or would you rather we go with the perfectly inconsistent alternative argument? I think our position would be that if the court is inclined to say, yes, those employees, that this was an unlawful subcontracting of employment to non-unit employees, that I would ask them that the court consider the alternative argument to say that, well, are they really non-unit employees if, in fact, they're Bob's employees or considered to be Bob's employees? And I would think that if the situation were reversed, and Bob's was trying to take a position, hey, these were not our employees, the NLRB would be coming in to say, yes, they are, under both case law and our recently adopted rule back in February of this year, where the evidence shows that you've had control over them, you've supervised them, you control their hours, you control how they work. But all of those It is, in fact, an alternative argument that we're making, and it's And the ALJ, as you acknowledge, in your exception, the ALJ made findings to the contrary, and the board adopted the ALJ's findings. Again, the substantial evidence is against you. I don't know if the ALJ adopted or made any finding with regard to whether, well, I guess he did. I'm sorry. Well, he did, because you specifically objected to it. He did, but the decision was based solely on the reading, as I understand, it was based solely on the reading of the contract with NASIS. And to say that, you know, NASIS says that they were not Bob's employees, and it was kind of a conclusion that therefore they're not Bob's employees. And I would argue that the analysis doesn't stop with a contract. And it certainly wouldn't in any other circumstance involving these types of issues. The question would be, and under the NLRB's rule, the question would be, did you supervise them? Did you have authority over their hiring and firing? Did you, you know, all the other aspects that are listed in that recent rule? Judge Rowe, any further questions? No, thank you. All right, we'll give you some time on rebuttal, Mr. Koldas, and we'll hear now from Mr. Saad. Thank you, Ron. Good morning, Your Honor. May it please the Court, David Saad for the Labor Board. Two initial points. First, the record amply supports the Board's finding that there was no fundamental change in the nature of the company's business when it subcontracted to NASIS. To the contrary, there is ample evidence, according to the Board's finding, that there was significant overlap in the work basically remained the same, loading and unloading tires, running the tires through some machines. The company points to the so-called new business that it was involved with, yet the record shows that out of the 111 massive subcontracted employees, only four of them exclusively performed that work. And it's an undisputed finding by the Board. Secondly, with respect to the question that was asked about whether or not there needs to be any adverse impact, first, from a factual standpoint, I do want to emphasize that the Board did find that there was at least some evidence of some layoffs, and also did specifically find that it's very possible that there could have been increased opportunities for overtime. Putting aside from a factual standpoint, from a legal standpoint, there are numerous cases cited in the Board's brief, and we have at page 22, where the Board, with court approval, though not specifically this court, have recognized that there does not need to be a loss of jobs in order for the subcontracting without bargaining to be unlawful. And that principle applies very well here, and particularly where this was a new union that had only been certified for approximately one month when the subcontracting began. Mr. Seid, can you cite two cases, though? I know there are a number of cases suggesting that you don't need to have substitution or replacement, but it seems that, in fact, most of the Board's cases do involve substitution or replacement when they find that subcontracting must be a mandatory subject of bargaining. That's correct, Your Honor. There are many cases where that might be the case, but there are also many cases where it isn't. And again, I would direct the Court to page 22 of the Board's brief, where the Board cites at least three or four different cases. In particular, the Society Espinola case in the First Circuit that enforced a Board decision, where the Court did explain there are opportunities for an employer to hire additional employees into the unit. In fact, the company has even acknowledged it could have hired employees into the unit, but it simply didn't want to. Well, that's not an excuse not to at least bargain with the union and see where things might go. So I would suggest that there is significant board law with at least one circuit approving, if not two, I think the Seventh Circuit also recognizing that there does not need to be a specific loss of jobs or even any specific adverse consequence to employees. And if you could maybe expand a little bit on what same work seems to me, because even in the case that you just mentioned, I think same work often means doing the identical work. You're hiring subcontractors to do the same work. So in this case, at least arguably, it's a similar type of work, but Bob's Tires has arguably expanded the amount of work it's doing. They have a new contract, they've bought new machinery. So it's not hiring new workers to do the existing work, but to do new work. So is that a distinction with some of the other cases by the Board? Can you cite a case that has similar facts where there's been an expansion of the scope of work, and that expansion has been covered by subcontractors? Your Honor, the Board in this case very reasonably analogized this case to a situation where there's a successorship and a substantial continuity of the business to determine that a change in customers or an addition of some equipment is not a substantial change in the nature of the business. But again, even if this Court were to disagree with that well-reasoned Board interpretation and analysis, I can't overemphasize that out of the 111 subcontracted employees, it is undisputed before this Court that only four of them exclusively performed this new work. The rest of them, 107, were doing the exact same work as the company's employees, loading and unloading tires, doing whatever other work might have been required around the yard. So they are doing the identical work, regardless of, again, even if this Court should consider the cutting of truck tires different than the cutting of car tires, because I believe one of the new machines involved the cutting of truck tires, which might have been new, but it's still cutting tires. So the Board would argue in the first place it is the same work, and even if this Court were to disagree, the vast majority of almost all of the subcontracted employees were still performing the exact same work. And implicit in their argument, you're not doubting that there's still a significant issue in the compliance as to whether they're doing, excuse me, whether any remedy is due here, right? That is entirely correct, Your Honor. Again, there is evidence that, from a factual standpoint, that there might have been some loss of jobs and possibly for overtime. But in a compliance proceeding, and it's completely speculative at this point, but the Board General Counsel would determine whether there was any actual loss of income or work by employees. And if it turns out that the investigation shows that there wasn't, then there would be no monetary remedy and there would simply be a cease and desist order and a notice posting. So that's an issue that is appropriately left for the compliance stage of this proceeding. Unless this Court had... Anything further, Judge Rowe? No, thank you. The Board would simply ask that the Court enforce its order. Thank you, Your Honor. All right. Thank you, Mr. Saeed. Mr. Koldas, we'll give you two minutes on rebuttal. Thank you, Your Honor. I have a couple of issues. The record does reflect that there were some layoffs. I think that actually that is a result of a charge that was settled somewhere along this process. The layoffs involved were, I think, there were five people, and I think the layoffs lasted for three or four days or less than that. They were brought back very quickly. So the layoffs really were not anything resulting from the MASIS project. To suggest that Bobbs could have hired more employees into the unit, I would say that that goes to our alternative argument that Judge Edwards referenced, which was that, you know, Bobbs did hire additional employees. And if they are in fact considered Bobbs employees, then they would be considered unit employees. So to suggest that that was his result, or that was what he could do, that is in fact what he did do. And he did it consistent with his past history, as the record reflects, which is typically to use temporary employee agencies to supply workers. The record shows that BJs was not able to supply any additional workers, so he went to a different temp agency to get those additional workers. Again, those would be part of the alternative argument. With regard to the 111 employees, that was over the total of the entire time that the MASIS contract was in place. I think the record reflects that at any particular point in time, there were basically 18 to 20 employees that were working at the same time. So when you say that only four out of 111, it was four people doing that job, but it could have been four different people out of that 111. So the 111, I think, is a bit of an overstatement in terms of what the record would reflect. All right. Thank you. We have your argument and we will take the case under advisement.
judges: Wilkins, Rao, Edwards